SEYMOUR, Circuit Judge.
Petitioner John Doe,[1] a federal prisoner, filed this first habeas petition pursuant to 28 U.S.C. § 2254 and an almost identical post-conviction relief application in state court, challenging the constitutionality of a prior Oklahoma state court conviction based on evidence of actual innocence. He also filed a motion to abate this § 2254 action pending state court exhaustion of his claims. The district court dismissed his habeas petition without prejudice, adopting the magistrate judge’s Report and Recommendation and holding that a stay under Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), was not available because the petition was not “mixed”[2] as in Rhines and, in any event, because petitioner lacked good cause for the stay. Although we disagree with the district court’s reasoning regarding the potential application of Rhines, we affirm its denial of a stay.
I
Petitioner was convicted of first-degree murder by a jury in Oklahoma and sentenced to life without parole. His direct appeal was unsuccessful and he did not file for a writ of certiorari, an application for state post-conviction relief, or a federal habeas petition. He was separately convicted in federal court for robbery of a federally insured bank, which took place in connection with the Oklahoma murder, and was sentenced to life imprisonment for that crime. While serving the federal life sentence in Texas, petitioner was convicted of murdering a fellow inmate. The government introduced evidence of petitioner’s Oklahoma murder conviction during the sentencing phase of his federal capital case, and he was subsequently sentenced to death.
Petitioner contends that following the imposition of his death sentence, newly discovered evidence came to light of his factual innocence of the Oklahoma murder and related federal robbery. In response to this new evidence — and within one year of the factual predicate that he asserts made its discovery possible (two days short of exactly one year) — petitioner filed a petition for post-conviction relief in Okla *1176 homa state court and this § 2254 petition in federal court,[3] along with a motion to stay and abate the § 2254 proceeding pursuant to Rhines until he could exhaust his state court remedies.[4] Petitioner raises an actual innocence claim both as a freestanding constitutional claim[5] and as a “gateway” to raising his otherwise time-barred constitutional claims, including ineffective assistance of trial and appellate counsel and suppression of exculpatory evidence. See Schlup v. Delo, 513 U.S. 298, 315, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (“[A] claim of innocence is ... a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.” (quoting Herrera, 506 U.S. at 404, 113 S.Ct. 853) (internal quotation marks omitted)).
The magistrate judge recommended the motion to stay be denied and the § 2254 petition be dismissed without prejudice because the petition was not mixed as in Rhines and because a stay was not warranted. The district court adopted the Report and Recommendation and dismissed the petition. It then denied petitioner’s Motion to Alter and Amend Judgment, as well as his request for a certificate of appealability.
Petitioner filed a timely notice of appeal and sought a certificate of appealability from this court, which was granted.
II
We review de novo the district court’s refusal to grant a stay on the basis that the petition was not mixed. Cummings v. Sirmons, 506 F.3d 1211, 1222 (10th Cir.2007). We review for abuse of discretion the court’s alternative denial of petitioner’s particular request for a stay due to his failure to show good cause. See Rhines, 544 U.S. at 278-79, 125 S.Ct. 1528.
A prisoner challenging a state conviction normally has one year to file a federal habeas petition, starting from “the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.” § 2244(d)(1)(A). But if the petitioner alleges newly discovered evidence, the filing deadline is one year from “the date on which the factual predicate of the claim ... could have been discovered through the exercise of due diligence.” § 2244(d)(1)(D). Based on petitioner’s ha-beas petition, we assume without deciding that the factual predicate of his actual innocence claim could not have been discovered with due diligence before the alleged triggering event, making the claim timely under § 2244(d)(1)(D). In addition, a habeas petition’s claims generally must be exhausted in state court before a federal court may review them. § 2254(b)(1)(A).
*1177 Petitioners were not always required to exhaust all of their claims in state court prior to filing a federal habeas petition in order to preserve each claim for federal review. Prior to Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), they were able to proceed piecemeal as long as their failure to assert the later grounds in a prior petition was not found to be “an abuse of the writ.” See Sanders v. United States, 373 U.S. 1, 17, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); see also Lundy, 455 U.S. at 514 n. 6, 102 S.Ct. 1198 (“[A] second or successive petition may be dismissed ... [where] new and different grounds are alleged, [if] the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.” (quoting 28 U.S.C. § 2254 Rule 9(b) (1976) (amended 2004))). The majority of Courts of Appeals “permitted the District Courts to review the exhausted claims in a mixed petition containing both exhausted and unexhausted claims.” Lundy, 455 U.S. at 513 n. 5, 102 S.Ct. 1198.
Then, in Lundy, the Court held that before a federal district court may review a habeas petition, all of its claims must be exhausted in state court. Id. at 522, 102 S.Ct. 1198. This “total exhaustion rule” requires a district court to dismiss habeas petitions containing both exhausted and unexhausted claims. Id. In deciding to require total exhaustion, the Court wanted to thwart prisoners intentionally withholding grounds for habeas relief “in the hope of being granted two hearings rather than one.” Id. at 521, 102 S.Ct. 1198 (quoting Sanders, 373 U.S. at 18, 83 S.Ct. 1068) (internal quotation marks omitted). The Court in Sanders was concerned about “abuse of the writ,” noting that “[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, to entertain collateral proceedings whose only purpose is to vex, harass, or delay.” 373 U.S. at 17-18, 83 S.Ct. 1068 (discussing successive petitions).. Lundy was decided in light of the doctrine that “one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.” 455 U.S. at 521, 102 S.Ct. 1198 (quoting Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)) (internal quotation marks omitted). The Court determined that total exhaustion “promotes comity and does not unreasonably impair the prisoner’s right to relief.” Id. at 522, 102 S.Ct. 1198.
Significantly, Lundy was decided at a time when petitioners could return to federal court after exhausting their unex-hausted claims to “present their perfected petitions with relative ease,” as there was no statute of limitations on filing federal habeas petitions. Rhines, 544 U.S. at 274, 125 S.Ct. 1528. Only later did Congress enact the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which introduced a one-year statute of limitations for filing federal habeas petitions. § 2244(d)(1)[6]; see also Rhines, 544 U.S. at 274, 125 S.Ct. 1528. Congress enacted AEDPA to “reduce delays in the execution of state and federal criminal sentences, particularly in capital cases” and to streamline the process by requiring a petitioner to exhaust all his claims in state court before filing his federal petition. Rhines, 544 U.S. at 276-77, 125 S.Ct. 1528 (quoting Woodford v. Garceau, 538 U.S. *1178 202, 206, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003)) (internal quotation marks omitted). At the same time, AEDPA “preserved Lundy’s, total exhaustion requirement.” See id. at 274, 125 S.Ct. 1528 (citing § 2254(b)(1)(A)).
Almost a decade after Congress enacted AEDPA, the Supreme Court unanimously acknowledged in Rhines that the interaction between Lundy’s total exhaustion requirement and AEDPA’s statute of limitations created at least two risks: (1) “ ‘mixed’ petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims”; and (2) “if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner’s chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim.” Id. at 275, 279, 125 S.Ct. 1528.
In “recognizing] the gravity of th[e] problem,” the Court sanctioned the stay-ahd-abeyance procedure. Id. at 275-78, 125 S.Ct. 1528. District courts have the prerogative to decide whether a stay is warranted given the specific circumstances of a case. Id. at 276, 125 S.Ct. 1528 (citing Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). “[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.” Landis, 299 U.S. at 254, 57 S.Ct. 163 (discussing general power to stay irrespective of whether petition is mixed). A district court has broad discretion to stay a petition, but the Court made clear that this discretion is not unlimited in the habeas context. See Rhines, 544 U.S. at 276-77, 125 S.Ct. 1528 (pointing to AEDPA’s “timeliness concerns” as limiting such discretion). “[G]ranting a stay effectively excuses a petitioner’s failure to present his claims first to the state courts,” which is “only appropriate when the district court determines there was good cause for the petitioner’s failure to exhaust his claims first in state court.” Id. at 277, 125 S.Ct. 1528. But where a petitioner has good cause for filing his federal habeas petition before first exhausting the claims, and where his unexhausted claims are “potentially meritorious” and his request for a stay is not made solely to delay litigation, a district court’s denial of a stay would likely be an abuse of its discretion. Id. at 278, 125 S.Ct. 1528.
The magistrate judge denied petitioner’s request for a stay because his petition was not mixed and because the judge determined he failed to demonstrate a need for a stay. We address these reasons in turn.
A
While the Court in Rhines explicitly discussed stays in the mixed-petition context, id. at 278, 125 S.Ct. 1528, its rationale is potentially applicable to a petition with wholly unexhausted claims that is protectively filed during the pendency of state postconviction proceedings. Petitioners with unmixed petitions may run a similar risk of “forever losing their opportunity” for federal review, id. at 275, 125 S.Ct. 1528, depending on the circumstances. Their chances of both returning to state court to exhaust their claims and then refiling their federal petition before the limitations period runs may be “slim,” especially where the unmixed petition is dismissed near the end of the one-year statute of limitations period. See id. In such cases, “the petitioner’s interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions.” See id. at 278, 125 S.Ct. 1528. Three Circuit Courts of Appeal have addressed *1179 the issue of Rhines stays as they apply to unmixed petitions: two have applied Rhines, see Heleva v. Brooks, 581 F.8d 187, 191-92 (3d Cir.2009), Dolis v. Chambers, 454 F.3d 721, 724-25 (7th Cir.2006), and one has declined to do so, see Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir.2006).
In Heleva v. Brooks, the Third Circuit relied on Pace v. DiGuglielmo, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d. 669 (2005), to conclude the Supreme Court “sanctioned” the application of a Rhines stay to “eontext[s] outside that of mixed petitions.” 581 F.3d at 191. The petitioner in Pace sought and was denied state post-conviction relief twice before filing a federal habeas petition containing only the claims exhausted in his second state post-conviction relief application. See 544 U.S. at 410-11, 418-19, 125 S.Ct. 1807. In finding that the second state post-conviction relief application was not “properly filed” due to its untimeliness and that it therefore could not statutorily toll the- limitations period under § 2244(d)(2), the Court suggested petitioners could avoid this problem “by filing a ‘protective petition’ in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.” Id. at 416, 125 S.Ct. 1807.
As the court in Heleva noted, the petition in Pace was not mixed. 581 F.3d at 191. It observed that “a distinction between mixed and non-mixed petitions would make no sense in the context of granting a stay to avoid penalizing a prisoner for reasonable confusion about state court filing requirements.” Id.
The petitioner in Heleva filed a wholly unexhausted habeas petition and a motion to stay and abate almost eight months after he filed a state petition for post-conviction ' relief. Id. at 189. He did so because he believed he would have only one day left on his federal habeas statute of limitations clock once the state addressed his post-conviction claims. Id. at 191. The court likened this “tight time-line” to “the kind of reasonable confusion about state filing requirements that Pace categorized as ‘good cause’ for a stay.” Id. at 191-92. It remanded the case to the district court to determine whether the petitioner satisfied the requirements for a Rhines stay, instructing the district court to consider, among other things, the amount of time available to a petitioner to file a § 2254 petition after exhausting state court remedies when evaluating whether a petitioner has met the good cause standard.[7] Id. at 192-93.
In Dolis v. Chambers, the Seventh Circuit granted a certificate of appealability, vacated the district court’s dismissal without prejudice of the petitioner’s wholly unexhausted habeas petition, and “remanded- with instructions to consider a stay of the federal court proceedings following Newell v. Hanks, 283 F.3d 827 (7th Cir.2002),” the circuit’s pre-Rhines authority recognizing a court’s authority to stay a mixed habeas petition.[8] Dolis, 454 F.3d at 722, 724-25. Because the petitioner had not yet filed a state post-conviction application and his federal habeas petition did *1180 not stop the AEDPA statute of limitations clock, a dismissal without prejudice “would effectively end any chance at federal habe-as review.” Id. at 723-25. While the court did not specify exactly how much time Dolis had remaining on the clock, it noted that “very shortly after the district court dismissed his case, it became impossible for him to refile it, because it would be barred by the statute of limitations.” Id. at 724. Accordingly, it suggested:
it would be wise for a petitioner to file in both state and federal court simultaneously, particularly where there is some procedural uncertainty about the state court post-conviction proceeding, and then ask the district court to stay the federal case until the state case concludes to ensure that she does not miss the one-year deadline.
Id. at 725 (emphasis added). The court added that “[i]n keeping with Rhines, the district court would naturally have discretion to decide whether a stay was warranted in the particular circumstances of each case.” Id.
In Rasberry v. Garcia, the Ninth Circuit declined to extend the stay and abeyance procedure to “the situation where the original habeas petition contained only unex-hausted claims....” 448 F.3d at 1154. Rasberry filed a petition for review in state court, which was denied, but then he filed a federal habeas application which included only unexhausted claims. Id. at 1152. He filed a second state post-conviction application to exhaust the claims in his federal habeas petition only after his federal petition was dismissed for lack of exhaustion and the federal statute of limitations had run. Id. On appeal from the district court’s dismissal of his federal petition, he contended the district court was obliged to inform “a pro se petitioner of the right to amend a habeas petition to include exhausted claims that the petitioner omitted from the habeas petition-if it is apparent from the record that the petitioner meant to include the claims.” Id. at 1153. In light of Rasberry’s request for a notice requirement, the Ninth Circuit declined to apply Rhines to the petition before it because of a concern that “[s]uch an extension would result in a heavy burden on the district court to determine whether a petitioner who file[d] a petition that on its face is unexhausted may have other exhausted claims that could have been raised.” Id. at 1154.
While none of these cases map perfectly onto the facts of the present case, petitioner’s situation is most like those of the petitioners in Dolis and Heleva. In each of those cases, the petitioner had a brief amount of time remaining on his federal statute of limitations clock. Whether this is deemed a “tight timeline,” Heleva, 581 F.3d at 191, or cause for “procedural uncertainty about the state court post-conviction proceeding,” Dolis, 454 F.3d at 725, it nevertheless is a significant factor in determining whether a Rhines stay is appropriate. Petitioner here has only two days remaining on his AEDPA statute of limitations and finds himself in a similar predicament as the petitioners in Heleva and Dolis except that he followed the Seventh Circuit’s guidance and filed a protective petition.
The court’s rationale in Rasberry must be read in light of the case’s factual context. It is neither surprising nor unprecedented that a court would refuse to recognize an obligation to provide the notice Rasberry requested be provided to all habeas petitioners. Cf. Pliler v. Ford, 542 U.S. 225, 231-32, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004) (declining to require district judges to warn pro se petitioners that their federal claims would be time-barred upon return to federal court). Furthermore, unlike Rasberry, petitioner *1181 in the present case raised the exact same claims in both his state postconviction application and federal habeas petition,[9] which were filed simultaneously just before the AEDPA statute of limitations had run: the quintessential “protective petition.” Petitioner in the instant case does not seek any type of notice from the district court, only the opportunity to receive a stay and abeyance for the same reasons the Court in Rhines adopted the procedure in the first place.
Where a petitioner files a protective federal habeas petition during the pendency of state court proceedings because of the short time period remaining on the federal statute of limitations and can meet the Rhines three-part test, the total exhaustion rule’s protection against “needless piecemeal litigation” and “proceedings whose only purpose is to vex, harass, or delay” is not compromised.[10] This is particularly so because
[f]actors (2) and (3) of the Rhines test itself — that the “unexhausted claims are potentially meritorious,” and that “there is no indication that the petitioner engaged in intentionally dilatory litigation tactics,” [Rhines, 544 U.S.] at 278, 125 S.Ct. 1528 — are designed, together with the first factor, to ensure that the Rhines stay and abeyance is not, contrary to the district court’s concern, available “in virtually every case.”
Blake v. Baker, 745 F.3d 977, 982 (9th Cir.2014). Thus, the Rhines three-part test strictly limits the availability of a stay where a petitioner has not yet exhausted his state remedies. Accordingly, granting a stay where appropriate under Rhines furthers the exhaustion doctrine’s principal design “to protect the state courts’ role in the enforcement of federal law and prevent disruption of state judicial proceedings.” Lundy, 455 U.S. at 518, 102 S.Ct. 1198.
Whether they have mixed or unmixed petitions, petitioners with little chance of exhausting their claims in state court and returning to federal court before the limitations period runs should not be foreclosed from the very mechanism designed to protect against such risk if they can satisfy the Rhines standards. In such cases, a categorical bar on stays for unmixed petitions would “unreasonably impair the prisoner’s right to relief,” id. at 522, 102 S.Ct. 1198, and could “effectively end any chance at federal habeas review,” Dolis, 454 F.3d at 725. Accordingly, we conclude that the district court had discretion to consider a Rhines stay even though petitioner filed an unmixed petition.
B
We now turn to the district court’s second reason for denying the stay, that it was unwarranted in this case. The Court in Rhines made clear that a district court would likely abuse its discretion if it denied a stay and dismissed a habeas petition where “the petitioner had good cause for his failure to exhaust [before filing his federal petition], his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.” *1182 544 U.S. at 278, 125 S.Ct. 1528. Following its decision in Rhines, the Court provided one example of good cause: “reasonable confusion about whether a state filing would be timely.” Pace, 544 U.S. at 416, 125 S.Ct. 1807. In doing so, the Court specifically suggested the filing of a “protective petition” in federal court in order to avoid the possibility that “a petitioner trying in good faith to exhaust state remedies ... litigate[s] in state court for years only to find out at the end that he never properly filed [as required by § 2244(d)(2) ], and thus that his federal habeas petition is time barred.” Id. (internal quotation marks omitted). As we have noted, both Heleva, 581 F.3d at 191—92, and Dolis, 454 F.3d at 724-25, equated the short time remaining on a petitioner’s AEDPA limitations period to the type of good cause recognized in Pace. Other courts have determined in the mixed-petition context that the Rhines good cause requirement is satisfied where a petitioner’s failure to exhaust in state court before filing in federal court was caused by ineffective assistance of post-conviction counsel, Blake, 745 F.3d at 983, by the “prosecution’s wrongful withholding of information,” Jalowiec v. Bradshaw, 657 F.3d 293, 304-05 (6th Cir.2011), or by “any external objective factor that cannot fairly be attributable to [petitioner],” Hernandez v. Sullivan, 397 F.Supp.2d 1205, 1206-07 (C.D.Cal.2005) (analogizing “good cause” requirement of Rhines to “cause” requirement in the procedural default context).
Petitioner here relies on the short' time remaining on the AEDPA statute of limitations for his actual innocence claim to establish good cause within the meaning of Rhines. Pursuant to our decision in Lopez v. Trani, 628 F.3d 1228, 1230-31 (10th Cir.2010), however, the magistrate judge determined that because petitioner’s actual innocence claim would be grounds for equitable tolling of the federal limitations period if that limitations period has run before petitioner is able to refile his federal habe-as application after exhausting state court remedies, a stay was unwarranted. While this case was pending appeal, the Supreme Court decided McQuiggin v. Perkins, holding that a “credible showing of actual innocence” provides an outright equitable exception to AEDPA’s statute of limitations. 133 S.Ct. at 1928, 1931-33. The Court departed slightly from our precedent in finding that a petitioner’s diligence is a factor in determining the plausibility of the actual innocence claim. Compare id. at 1928, 1935-36 (including unexplained delay as a factor in determining the credibility of actual innocence claim), with Lopez, 628 F.3d at 1231 (noting that “the lack of a showing of due diligence in pursuing claims should not prevent the equitable tolling of the statute of limitations for a petitioner who has presented a substantial claim of actual innocence”).
In light of McQuiggin, petitioner here does not face a similar dilemma to the “predicament” of the petitioner in Pace or to the petitioners in the other courts finding that the Rhines good cause standard was met. If petitioner does have a substantial actual innocence claim, as he contends,[11] under McQuiggin the existence of such a claim will serve as an exception to the AEDPA statute of limitations and he therefore does not have a legitimate concern that the claim will be time barred in federal court. See Aplt. Reply Br. at 6 (conceding McQuiggin “definitively established the availability of an innocence exception to the statute of limitations”); *1183 McQuiggin, 133 S.Ct. at 1928.[12] McQuiggin thus eliminated petitioner’s tight-time-line predicament, and he no longer has good cause within the meaning of Rhines for his failure to first exhaust his claims in state court before seeking federal court action.
McQuiggin’s factoring of diligence into the credibility of a petitioner’s actual innocence claim — whether “it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence,” 133 S.Ct. at 1935 (quoting Schlup, 513 U.S. at 327, 115 S.Ct. 851)— creates no higher burden at the equitable exception stage than the petitioner would face in proving actual innocence as either a gateway, House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (“A petitioner’s burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt....”), or a freestanding claim, id. at 555, 126 S.Ct. 2064 (noting a hypothetical freestanding innocence claim requires “more convincing proof of innocence than [a gateway claim]”). A stay cannot shield petitioner from the consideration of diligence with respect to the reliability of his actual innocence claim, whether a gateway or freestanding claim. See Schlup, 513 U.S. at 332, 115 S.Ct. 851 (“[C]ourt[s] may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of ... evidence [of actual innocence].”); Herrera, 506 U.S. at 421-23, 113 S.Ct. 853 (considering “11th hour” affidavits produced ten years after conviction in deciding merits of actual innocence claim).
Petitioner also contends the potential application of the doctrine of laches in state court and the ineffective assistance of post-trial counsel are other sources for good cause. However, if a state court determines petitioner is barred by the doctrine of laches, the McQuiggin exception will still serve to alleviate concern regarding timeliness of the federal petition. With respect to the possibility that a lach-es determination could be a procedural bar as an adequate and independent state ground for dismissal of the post-conviction application, this is a hurdle petitioner would have to overcome whether or not a stay is granted. A Rhines stay is only concerned with ensuring a federal petition remains timely filed while a petitioner’s claims are exhausted in state court; it does not protect a federal petition from the state’s possible “defense” of an adequate and independent state ground. Likewise, petitioner’s concern that a laches determination may generate factual findings regarding petitioner’s diligence to which the district court may owe deference is irrelevant to the need for a stay. With or without a stay, petitioner will still face the same burden to show a substantial actual innocence claim, as discussed above. Assuming arguendo there are factual findings from the state court regarding petitioner’s diligence, these will have the same effect in federal court whether or not a stay is granted. Finally, even assuming ineffective assistance of post-trial counsel could provide good cause in isolation, because petitioner’s actual innocence claim is the gateway for consideration of these otherwise untimely claims, the available McQuiggin exception to AEDPA’s statute of limitations removes any need for a stay in this case.
*1184 Given that grounds exist for an equitable exception to the AEDPA statute of limitations, petitioner cannot demonstrate the good cause necessary to support a Rhines stay and abeyance of this action, and the district court did not abuse its discretion in so holding. We therefore need not reach the issue of whether petitioner’s actual innocence claim is itself a freestanding constitutional claim or merely a gateway for otherwise time-barred constitutional claims. See McQuiggin, 133 S.Ct. at 1931 (“We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.”); Case, 731 F.3d at 1036 (same).
III
We AFFIRM the district court’s denial of the stay and its dismissal without prejudice of petitioner’s habeas petition.

. In light of the sealed nature of portions of the record, we have omitted the name of petitioner and all nonessential facts.

. A "mixed” habeas petition contains claims that have been exhausted in state court and ones that have not. Rhines, 544 U.S. at 271, 125 S.Ct. 1528.

. None of the claims in the federal petition were exhausted in state court and, with the exception of the actual innocence claim, they are concededly untimely under 28 U.S.C. § 2244(d)(1).

. Petitioner had already filed a 28 U.S.C. § 2255 action in Texas, in which he is challenging his federal death sentence. The federal district court in Texas granted his motion to stay and abate that proceeding pending resolution of postconviction proceedings challenging his Oklahoma conviction, which the court required him to pursue within thirty days of the order to stay. Four days later, petitioner filed the state and federal requests for post-conviction relief from his Oklahoma conviction.

.The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.” McQuiggin v. Perkins, - U.S. -, 133 S.Ct. 1924, 1931, 185 L.Ed.2d 1019 (2013) (citing Herrera v. Collins, 506 U.S. 390, 404-05, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)).

. The one-year clock is stopped while a petitioner's "properly filed” state post-conviction petition is pending. § 2244(d)(2).

. The court determined the petitioner would actually have had at least 30 days to refile a habeas petition. Heleva, 581 F.3d at 193.

. In Dolis, the court was addressing the state's request for reconsideration of its ruling, which it construed as a petition for rehearing. 454 F.3d at 722. The state contended the court had no jurisdiction over the district court's dismissal without prejudice. Id. at 724. The court denied the petition and applied Rhines in analyzing why the district court should consider a stay and abeyance rather than dismissal. Id.

. Notably, this is petitioner’s first federal ha-beas petition, and "[dismissal of a first federal habeas petition is a particularly serious matter.” Case v. Hatch, 731 F.3d 1015, 1036 (10th Cir.2013) (alteration in original) (quoting House v. Bell, 547 U.S. 518, 539, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006)) (internal quotation marks omitted), should consider a stay and abeyance rather

. Moreover, the enactment of AEDPA's statute of limitations reduced the time period in which piecemeal litigation could occur. See Lundy, 455 U.S. at 521, 102 S.Ct. 1198 (noting concern that petitioners would splice petitions “in the hope of being granted two hearings rather than one”).

. We do not decide whether petitioner has a substantial innocence claim. That determination is for the Oklahoma state court to decide in the first instance.

. We focus solely on petitioner's actual innocence claim with regard to the need for a stay because the remaining claims are already untimely under AEDPA and do not implicate the court’s concern in Pace and Rhines.