**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**April 17, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

RODGER D. STEVENS,

    Petitioner - Appellant,

v.

WILLIAM RANKINS, Warden,

    Respondent - Appellee.

No. 24-5150
(D.C. No. 4:24-CV-00053-GKF-MTS)
(N.D. Okla.)

_____

### ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

To appeal the denial of a petition for a writ of habeas corpus, a petitioner must

first obtain a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A).

Petitioner-Appellant Rodger D. Stevens, a prisoner in state custody, seeks a COA

regarding whether the district court erroneously dismissed his habeas petition as time

barred. Because reasonable jurists would agree the habeas petition was barred by the

Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") one-year statute of

limitations, we deny Mr. Stevens's application for a COA and dismiss this matter.

_____

[*] This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

## I.   BACKGROUND

On October 18, 2017, Mr. Stevens was convicted at a jury trial in Oklahoma state court for performing a lewd act in the presence of a minor, an eight-year-old boy. Because he had previously been convicted of two or more felonies, Mr. Stevens was sentenced to life in prison for this offense.

Mr. Stevens appealed his conviction to the Oklahoma Court of Criminal Appeals ("OCCA"), which denied that direct appeal on May 16, 2019. Mr. Stevens did not seek further review of the OCCA's opinion, and the judgment against him became final on August 14, 2019, when his window to file a petition for a writ of certiorari with the U.S. Supreme Court closed. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that a judgment becomes final "when the [defendant's] time for pursuing direct review in this Court, or in state court, expires"). Mr. Stevens eventually sought collateral review of his conviction on October 18, 2022, when he filed an application for postconviction relief ("PCR") in state court. After closely considering Mr. Stevens's arguments, the state district court denied the PCR application, and the OCCA affirmed that denial.

On February 7, 2024, Mr. Stevens filed a habeas petition in the U.S. District Court for the Eastern District of Oklahoma. Mr. Stevens raised two claims in the habeas petition, which tracked the claims raised in his PCR application. First, he argued he was denied effective assistance of appellate counsel on direct appeal, because his appellate counsel "failed to fully investigate the facts of [his] case and failed to raise [the issue of] ineffective assistance of trial counsel when [Mr. Stevens] asked him to." ROA Vol. I at 10. Second, Mr. Stevens argued he was denied a fair trial because the prosecutors did

2

not "turn over to the defense the full content of [relevant] text messages." *Id.* at 12. Mr. Stevens urged that prosecutors withheld approximately 100,000 text messages that would "vindicate [him] of any wrongdoing." *Id.* at 12. In response, the State of Oklahoma, on behalf of Respondent-Appellee, Warden William Rankins, filed a motion to dismiss the habeas petition as time barred under AEDPA's one-year statute of limitations.

On December 17, 2024, the district court granted the State's motion and dismissed the habeas petition as time barred. In so ordering, the district court first concluded that the habeas petition was untimely because AEDPA's one-year statute of limitations began to run on August 15, 2019, the day after Mr. Stevens's judgment became final, yet he did not file the petition until February 2, 2024. The court found this filing deadline was not statutorily tolled by any pending state-court proceedings, because Mr. Stevens did not file his PCR application until October 18, 2022, by which point the filing deadline had already expired. And the court ruled that Mr. Stevens had not shown he was entitled to equitable tolling because nothing indicated that Mr. Stevens diligently attempted to file his petition in a timely manner, nor had he pointed to any extraordinary circumstances that prevented him from complying with the statute of limitations.

The district court also closely considered whether Mr. Stevens had made a showing of actual innocence. The court noted that Mr. Stevens's "most specific argument" on this point was "that certain text messages not presented to the jury would show that he was not alone with the victim" on certain dates. *Id.* at 312–13. But the court found this "actual-innocence claim falls under the crushing weight of the evidence that

was presented to the jury at trial." *Id.* at 313. The court recounted the facts presented at trial, explaining that the trial evidence demonstrated that Mr. Stevens was alone with the victim "on several occasions between August and October 2016" and committed sexual acts in the victim's presence. *Id.* at 315. In light of that evidence, the district court ruled that a jury given all evidence—including the "exculpatory" evidence Mr. Stevens alleged to exist—would still have convicted him for performing a lewd act in the presence of a minor. *Id.* Accordingly, Mr. Stevens had not made a showing of actual innocence, and his habeas petition was barred by AEDPA.

The district court entered judgment on December 17, 2024. Shortly after, the district court granted Mr. Stevens leave to proceed in forma pauperis on appeal. Mr. Stevens thereafter timely filed a notice of appeal.

## II.    STANDARD OF REVIEW

To obtain a COA, Mr. Stevens must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). Because the district court denied the habeas petition on a procedural ground, Mr. Stevens must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). We review the district court's decision de novo. *See United*

4

*States v. Denny*, 694 F.3d 1185, 1189 (10th Cir. 2012) ("We generally review de novo the dismissal of a habeas petition on the ground of untimeliness.").

### III.    DISCUSSION

### A.    *Legal Standard*

Under AEDPA, a one-year statute of limitations applies to habeas petitions. 28 U.S.C. § 2244(d)(1). In relevant part, the statute of limitations begins running on "the date on which the judgment became final by the conclusion of direct review." *Id.* § 2244(d)(1)(A). The deadline is statutorily tolled during the pendency of "a properly filed application for State post-conviction or other collateral review." *Id.* § 2244(d)(2). The deadline may also be equitably tolled if the untimely petitioner (1) diligently pursued habeas relief, and (2) an "'extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

If a petitioner is ineligible for statutory or equitable tolling, AEDPA bars any habeas relief unless the petitioner makes "a 'credible showing of actual innocence,'" which "provides an outright equitable *exception* to AEDPA's statute of limitations." *Doe v. Jones*, 762 F.3d 1174, 1182 (10th Cir. 2014) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)). To establish actual innocence, a petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536–37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Critically, a petitioner claiming actual innocence must establish his or her "factual innocence," as opposed to

5

relying on "mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). An actual-innocence claim cannot be founded on "speculations and conjectures" but instead requires some "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021) (quoting *House*, 547 U.S. at 537).

### B.    *Application*

In his application for a COA, Mr. Stevens does not contest the district court's conclusion that he filed the habeas petition after his one-year filing deadline had elapsed, nor does he assert that he is entitled to statutory or equitable tolling.[1] Rather, Mr. Stevens argues AEDPA's statute of limitations is inapplicable because he has made "a convincing showing of actual innocence" and, as such, this court can consider his "otherwise untimely claims of constitutional error." Appellant's Br. at 7.

---

[1] In a single sentence, Mr. Stevens asserts that the statute of limitations has not yet started to run because he has not yet obtained exculpatory evidence the State withheld at trial. *See* Appellant's Br. at 11 (arguing that prosecutors have "refuse[d] to turn over all . . . the text messages . . . [he] has been asking for since the beginning of [] his incarceration"). To support this argument, Mr. Stevens cites 28 U.S.C. § 2244(d)(1)(D), which provides that AEDPA's statute of limitations will not run until "the date on which the factual predicate of the . . . claims presented could have been discovered through the exercise of due diligence." The factual predicate of Mr. Stevens's claim is that State prosecutors failed to give him 100,000 text messages that he believes to be exculpatory. *See* Appellant's Br. at 4–5, 11. And if the text messages were in fact exculpatory, then the limitations period likely would not begin until Mr. Stevens obtained those messages. *See* *Carter v. Bigelow*, 787 F.3d 1269, 1282 (10th Cir. 2015) (collecting cases where "courts have found . . . that the limitation period does not begin to run until post-conviction counsel receives *Brady* evidence"). But as discussed below, Mr. Stevens has not shown that prosecutors withheld any exculpatory evidence. The statute of limitations thus began to run on "the date on which the judgment became final." 28 U.S.C. § 2244(d)(1)(A).

Mr. Stevens asserts that although the prosecutors in his case "received from [the] forensic investigation [of two relevant cell phones] over 100,000 texts," *id.* at 4, his trial counsel never obtained those 100,000 text messages, *id.* at 9. Mr. Stevens urges that if "the State at any time in the investigation, prehearings, and trial [had] provided defense [counsel] all of the texts requested, a different result would have been obtained." *Id.* at 5. And Mr. Stevens insists his trial counsel "failed in his duty to acquire [the 100,000 texts] from the prosecution" and in fact "refused to . . . acquire [that] withheld evidence." *Id.* at 9. If the prosecution were to provide those text messages, Mr. Stevens argues that he could demonstrate that some of them were exculpatory.

This argument falls short of demonstrating that Mr. Stevens is actually innocent of performing a lewd act in the presence of a minor. At core, Mr. Stevens argues because State prosecutors had *some* information that they did not give him, that information must be exculpatory. But we have long held that the Constitution "does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant." *Smith v. N.M. Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995). Rather, prosecutors are required to give defendants only "evidence [that] is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This does not translate into a general right to discovery in criminal cases: "Simply because information may aid a defendant in the preparation of his or her case does not mean that the

7

prosecution is obliged under *Brady* to disclose it." *United States v. Garcia-Martinez*, 730 F. App'x 665, 673 (2018) (unpublished).[2]

Although Mr. Stevens urges that the prosecutors in his case obtained "over 100,000 texts" throughout the course of the investigation, he gives no reason to believe that any of those text messages were exculpatory. Unless the messages were "material either to guilt or to punishment," the prosecutors were not obligated to give them to the defense. *Brady*, 373 U.S. at 87. Moreover, it is implausible that many of those text messages were relevant to Mr. Stevens's offense. As the district court noted, "the total number of text messages recovered from both phones included messages to all of the contacts on the phone, not just" messages relevant to the offense. ROA Vol. I at 314. Simply put, Mr. Stevens's bare "speculations and conjectures" that these 100,000 text messages were exculpatory does not establish actual innocence.[3] *Taylor*, 7 F.4th at 927.

Mr. Stevens does point to one undisclosed text message that he believes was material to proving his innocence. That text, dated October 23, 2016, contained a picture of the victim that Mr. Stevens sent to the victim's mother. Mr. Stevens claims the date of this text message contradicts testimony by the victim's mother that Mr. Stevens was

---

[2] We cite unpublished cases for their persuasive value only and do not treat them as binding authority. *See United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

[3] The state trial court conducted an evidentiary hearing and ruled that the prosecutors gave Mr. Stevens "all evidence in the State's possession, including text messages." ROA Vol. I at 271. In his application for a COA, Mr. Stevens does not explain why that ruling is incorrect. But as discussed, even assuming that prosecutors recovered 100,000 text messages and did not disclose those messages to Mr. Stevens, this does not per se amount to a *Brady* violation.

alone with the victim on October 1, 2016. He asserts that this message "proves [that] the day" on which he allegedly performed a lewd act in front of the victim was October 23, 2016, not October 1, 2016, and thereby undermines the credibility of the victim's mother. *Id.*

This text message, however, says nothing about whether Mr. Stevens is culpable for the offense of conviction. *See Pacheco v. Habti*, 62 F.4th 1233, 1244 (10th Cir. 2023) (noting that "factual innocence turns on the moral culpability of the defendant"). Even if the victim's mother misremembered a date during her testimony, that fact does not indicate that Mr. Stevens is factually innocent of performing a lewd act in front of the victim. And the text Mr. Stevens describes is wholly disconnected from "what [he] did." *Id.* at 1245. As the Supreme Court has explained, "[t]his sort of latter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness's] account." *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992).

As discussed by the district court, there was ample evidence at trial showing that Mr. Stevens was alone with the victim "on several occasions between August and October 2016."[4] ROA Vol. I at 315. That evidence included text messages between Mr. Stevens and the victim's mother, including one sent on October 1, 2016, that

---

[4] Mr. Stevens does not contest the district court's description of the contrary trial evidence anywhere in his application for a COA, which undermines his claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 539 (2006) (explaining the actual-innocence inquiry "requires a holistic judgment" based on all relevant evidence); *Fontenot v. Crow*, 4 F.4th 982, 1035–52 (10th Cir. 2021) (considering whether the entire record supported an actual-innocence claim).

described a sexual act Mr. Stevens had performed in front of the victim. *Id.* at 314. The single text Mr. Stevens relies on does not sufficiently undermine all other trial evidence or provide any basis to conclude that, if that single text were introduced at trial, "no reasonable juror would have found [Mr. Stevens] guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 537. In short, Mr. Stevens has not demonstrated that he is actually innocent. *Id.* at 538 (describing actual innocence as a "demanding" standard).

We therefore hold that reasonable jurists would not debate whether Mr. Stevens is actually innocent. Accordingly, Mr. Stevens's habeas petition is barred by AEDPA's statute of limitations.

## IV.   CONCLUSION

For the reasons above, we DENY Mr. Stevens's application for a COA and DISMISS this matter.

Entered for the Court

Carolyn B. McHugh
Circuit Judge